*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
# FOR THE ARMED FORCES

————————

## UNITED STATES
Appellee

**v.**

## Isac D. MENDOZA, Staff Sergeant
United States Army, Appellant

**No. 23-0210**
Crim. App. No. 20210647

Argued March 5, 2024—Decided October 7, 2024

Military Judges: Steven C. Henricks
and Ryan W. Rosauer

For Appellant: *Captain Matthew S. Fields* (argued); *Colonel Philip M. Staten*, *Major Bryan A. Osterhage*, and *Jonathan F. Potter,* Esq. (on brief); *Captain Carol K. Rim.*

For Appellee: *Captain Anthony J. Scarpati* (argued); *Colonel Christopher B. Burgess*, *Lieutenant Colonel Jacqueline J. DeGaine*, and *Major Chase C. Cleveland* (on brief).

Judge HARDY delivered the opinion of the Court, in which Chief Judge OHLSON and Judge JOHNSON joined. Judge SPARKS filed a separate opinion, concurring in part and dissenting in part and in the judgment. Judge MAGGS filed a separate opinion, concurring in part and dissenting in part.

————————

Judge HARDY delivered the opinion of the Court.

After a night of socializing and heavy drinking with other soldiers, JW blacked out, leaving her with no further memories until the following morning. An investigation by the United States Army Criminal Investigation Division (CID) established that later that night, JW and Appellant went to Appellant's barracks room where Appellant performed a sexual act upon JW. Under the theory that JW did not consent to the act, the Government charged Appellant with sexual assault in violation of Article 120(b)(2)(A), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920(b)(2)(A) (2018).[1] Notably, the Government did not charge Appellant with a sexual assault under Article 120(b)(3)(A), UCMJ, which would have required the Government to prove both that Appellant committed a sexual act on JW when JW was incapable of consenting to the sexual act due to impairment by any drug, intoxicant, or other similar substance and that Appellant knew or should have known that JW was incapable of consenting.

At trial, the Government presented evidence of JW's extreme intoxication and argued to the military judge sitting alone both that JW would not have consented to sexual intercourse with Appellant and that she was incapable of consenting to sexual intercourse due to her high level of intoxication. The military judge found Appellant guilty, contrary to his plea, of one specification of sexual assault in violation of Article 120, UCMJ, and the United States Army Court of Criminal Appeals (ACCA) affirmed. *United States v. Mendoza*, No. ARMY 20210647, 2023 CCA LEXIS 198, at *10, 2023 WL 3540415, at *4 (A. Ct. Crim. App. May 8, 2023) (unpublished).

Before this Court, Appellant challenges the legal sufficiency of his conviction on the grounds that the Government failed to introduce affirmative evidence of the lack of

---

[1] Appellant was also charged with and acquitted of a second specification of abusive sexual contact in violation of Article 120, UCMJ.

consent beyond a reasonable doubt. We disagree with Appellant that direct evidence of JW's lack of consent was necessary for his conviction to be legally sufficient, but we do agree with his secondary argument that Article 120(b)(2)(A), UCMJ, and Article 120(b)(3)(A), UCMJ, create separate theories of criminal liability. Article 120(b)(2)(A), UCMJ, criminalizes engaging in a sexual act with a person capable of consenting who did not consent, and Article 120(b)(3)(A), UCMJ, criminalizes engaging in a sexual act with a person who is incapable of consenting due to impairment by any drug, intoxicant, or other similar substance when the accused knows or should have known that the person was incapable of consenting.

In this case, the Government elected not to charge Appellant with sexual assault under Article 120(b)(3)(A), UCMJ (a sexual act upon a person incapable of consenting), and instead charged Appellant with sexual assault under Article 120(b)(2)(A), UCMJ (a sexual act upon a person capable of consenting who did not consent). Nevertheless, at trial the Government presented significant evidence of JW's extreme intoxication and argued that JW's inability to consent established the absence of consent. The Government's approach—which conflated two different and inconsistent theories of criminal liability—raises significant due process concerns. Because the ACCA's decision upholding Appellant's conviction does not explain how or why the evidence of JW's intoxication factored into its analysis, we reverse the decision of the ACCA and remand the case for the court to reconsider its legal and factual sufficiency analysis in light of this opinion.

## I. Background

In July 2020, Appellant and JW were both stationed at Camp Casey, Korea. On July 11, 2020, JW went off-post to eat and drink with fellow soldiers. When the group returned to the barracks, they joined other soldiers, including Appellant, who were socializing outside. JW testified that she recalled coming back to the barracks, seeing the other soldiers outside, and continuing to drink with them before she eventually blacked out.

JW's next memory was waking up the following morning to Appellant knocking on her barracks room door to return her shoes. JW did not recognize Appellant and did not know why he was at her door. JW went back to sleep and woke up to Appellant again knocking at her door to ask if she was okay.

Afterwards, JW went to the bathroom and "realized something was wrong." JW noticed that she was not wearing the underwear she had been wearing the night before and that her tampon was pushed all the way inside her to the extent that she could not reach the string. JW testified that she had never inserted a tampon so far, and that she would never have sex with her tampon in or when she was on her period. Realizing that something was wrong and starting to panic, JW went to the barracks Charge of Quarters (CQ) desk to try to identify Appellant and learn what happened the night before.

The CQ noncommissioned officer (NCO) testified that JW was crying and was very upset when she came to the CQ desk. The CQ NCO contacted a Sexual Harassment/Assault Response and Prevention (SHARP) program representative, who later met with JW and arranged for her to file a report and to receive a sexual assault forensic examination (SAFE) at the troop medical clinic.

While she was waiting to be taken to the medical clinic, JW went to her friend, Specialist (SPC) RL, to ask what had happened the night before. SPC RL testified that JW was upset, crying, and confused when they spoke. After JW left for the clinic, SPC RL and his NCO spoke to Appellant after hearing reports of his interactions with JW the previous night. Appellant told SPC RL and his NCO that JW had fallen asleep in his bed. During their conversation, JW called SPC RL, who handed the phone to Appellant. JW asked Appellant what happened, and he replied that nothing happened, and that she had locked herself in his bathroom. Appellant then requested to accompany SPC RL and his NCO to the clinic to see JW. On the way, Appellant told SPC RL that JW had taken a shower in his room and then put her shirt on backwards. At the parking lot of the clinic,

Appellant told a CID agent who was conducting canvassing interviews that JW had been in his room the night before.

During a later interview with the CID agent, Appellant admitted to having sexual intercourse with JW in his bedroom. He acknowledged that JW was extremely intoxicated at the time and that she was incapable of consenting because of her intoxication. Appellant also admitted that he "was in control the whole time" during intercourse; however, he never admitted that JW verbally or physically withheld consent. U.S. Army Criminal Investigation Laboratory testing of cervical swabs taken from JW during her SAFE exam confirmed the presence of semen matching Appellant's DNA profile.

Evidence collected by CID during its investigation, including CCTV footage from the barracks, helped reconstruct the events at the barracks during the period when JW blacked out. Witnesses testified that they saw JW drink and socialize with other soldiers, including Appellant, while displaying symptoms of intoxication, including slurred speech and unsteady movements. Some soldiers also noted JW's flirtatious behavior with Appellant and others. The CCTV footage from the barracks showed that JW walked unsteadily with Appellant to his room while Appellant grabbed her crotch. Later, the footage captured JW and Appellant exiting his room with JW's arms seemingly draped over Appellant's shoulders for support. JW testified that she remembered nothing of her encounter with Appellant.

A military judge sitting as a general court-martial convicted Appellant of one specification of sexual assault in violation of Article 120(b)(2)(A), UCMJ, and sentenced him to a dishonorable discharge, thirty months of confinement, and reduction to the grade of E-1. The convening authority approved the sentence and waived automatic forfeitures of all pay and allowances for six months for the benefit of Appellant's wife.

On appeal before the ACCA, Appellant argued that the evidence was factually insufficient because the

Government "produced no evidence that the victim did not consent to sexual intercourse." *Mendoza*, 2023 CCA LEXIS 198, at *8, 2023 WL 3540415, at *3. The ACCA rejected this argument, explaining that several factors led it to find Appellant's conviction factually sufficient, "including but not limited to: the victim's high level of intoxication, [A]ppellant's statement to CID, eyewitness testimony, and the CCTV footage." *Id.*, 2023 WL 3540415, at *3. Because the ACCA was "convinced of [A]ppellant's guilt beyond a reasonable doubt," it affirmed his conviction. *Id.* at *10, 2023 WL 3540415, at *3-4 (citation omitted) (internal quotation marks omitted).

We granted review to determine whether Appellant's conviction for sexual assault without consent was legally sufficient. *United States v. Mendoza*, 84 M.J. 105 (C.A.A.F. 2023) (order granting review).

## II. Discussion

In most legal sufficiency cases, which we review de novo, the Court asks "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Smith*, 83 M.J. 350, 359 (C.A.A.F. 2023) (citations omitted) (internal quotation marks omitted). Because the Court draws every reasonable inference from the evidence in favor of the prosecution, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (alteration in original) (citations omitted) (internal quotation marks omitted). This deferential standard impinges upon the factfinder's discretion " 'only to the extent necessary to guarantee the fundamental protection of due process of law.' " *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

This case, however, departs from the usual "reasonable trier of fact" analysis because Appellant challenges the legal sufficiency of his sexual assault conviction on two unusual grounds. First, Appellant argues that the evidence

was legally insufficient because the Government relied solely on circumstantial evidence to prove that JW did not consent to the sexual activity. In Appellant's view, the Government's failure to present any "affirmative" evidence of JW's lack of consent means that no rational factfinder could legally find him guilty under Article 120(b)(2)(A), UMCJ.

In the alternative, Appellant argues that his conviction was legally insufficient because the Government violated his due process rights by conflating two different theories of criminal liability under Article 120, UCMJ, during his court-martial. Appellant asserts that Article 120(b)(2)(A), UCMJ, and Article 120(b)(3)(A), UCMJ, establish separate theories of liability, and that the Government robbed him of his due process right to fair notice by arguing that JW was incapable of consenting due to alcohol intoxication without charging Appellant with sexual assault under Article 120(b)(3)(A), UCMJ. In Appellant's view, because the Government charged him under Article 120(b)(2)(A), UCMJ, (sexual assault without consent), he had no notice that he needed to defend himself from the Government's allegation that JW was incapable of consenting. We consider each of Appellant's arguments in turn.

### A. Article 120(b)(2)(A) does not require "affirmative" evidence

This Court has repeatedly held that the Government may meet its burden of proving an accused's guilt beyond a reasonable doubt with circumstantial evidence. *United States v. Long*, 81 M.J. 362, 368 (C.A.A.F. 2021); *see also King*, 78 M.J. at 221 (first citing *United States v. Kearns*, 73 M.J. 177, 182 (C.A.A.F. 2014); then citing *United States v. Young*, 64 M.J. 404, 407 (C.A.A.F. 2007)). Nevertheless, Appellant argues that this principle works differently in sexual assault cases, which—in Appellant's view—require "at least *a single* fact related to affirmative non-consent in order to deem a conviction for sexual assault without consent legally sufficient." Reply Brief of Appellant at 13, *United States v. Mendoza*, No. 23-0210 (C.A.A.F. Jan. 12, 2024) (emphasis in original).

We disagree. The President has instructed that findings of guilt "may be based on direct or circumstantial evidence," without mention of any exception for certain offenses. Rule for Court Martial (R.C.M.) 918(c). And in *Long*—a case involving rape and other sex offenses—we recognized that "the government is free to meet its burden of proof with circumstantial evidence." 81 M.J. at 368 (alteration in original removed) (internal quotation marks omitted) (quoting *King*, 78 M.J. at 221). The President's instructions and our case law are consistent with the Supreme Court's guidance that circumstantial evidence "is intrinsically no different from testimonial evidence." *Holland v. United States*, 348 U.S. 121, 140 (1954); *see also Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) ("we have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required"). Accordingly, we reiterate once again that the absence of direct evidence of an element of an offense does not prevent a finding of guilty for that offense from being legally sufficient.

### B. Article 120(b)(2)(A) and Article 120(b)(3)(A) establish separate theories of liability[2]

Appellant's alternative argument requires us to examine Article 120(b)(2)(A), UCMJ, to determine whether the Government can prove sexual assault "without the consent" of the victim by establishing that the victim was incapable of consenting. This Court reviews questions of statutory interpretation de novo. *United States v. Lopez de Victoria*, 66 M.J. 67, 73 (C.A.A.F. 2008). The first step in statutory interpretation cases "is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *United States v. McPherson*, 73 M.J. 393, 395 (C.A.A.F. 2014) (citation omitted) (internal quotation marks omitted). "[I]f

---

[2] All statutory references in this part of the opinion are to Article 120, UCMJ, 10 U.S.C. § 920 (2018), unless otherwise indicated. For readability purposes, we refer to "subsection (b)(2)(A)" and "subsection (b)(3)(A)" for Article 120(b)(2)(A), UCMJ, and Article 120(b)(3)(A), UCMJ, respectively.

the statutory language is unambiguous and the statutory scheme is coherent and consistent," the inquiry is done. *Id.* "Whether the statutory language is ambiguous is determined 'by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *Id.* (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

When we engage in this analysis, the Court "'typically seeks to harmonize independent provisions of a statute.'" *United States v. Kelly*, 77 M.J. 404, 407 (C.A.A.F. 2018) (quoting *United States v. Christian*, 63 M.J. 205, 208 (C.A.A.F. 2006)). To this end, this Court employs the surplusage canon, which requires "that, if possible, every word and every provision is to be given effect and that no word should be ignored or needlessly be given an interpretation that causes it to duplicate another provision or to have no consequences." *United States v. Sager*, 76 M.J. 158, 161 (C.A.A.F. 2017).

### 1. Text of Article 120(b), UCMJ

Article 120(b), UCMJ, criminalizes sexual assault in the military and defines multiple ways in which the Government may prove the offense. Article 120(b), UCMJ, provides in relevant part:

> (b) SEXUAL ASSAULT.—Any person subject to this chapter who—
>
> > (1) commits a sexual act upon another person by—
> >
> > > (A) threatening or placing that other person in fear;
> > >
> > > (B) making a fraudulent representation that the sexual act serves a professional purpose; or
> > >
> > > (C) inducing a belief by any artifice, pretense, or concealment that the person is another person;
> >
> > (2) commits a sexual act upon another person—

> (A) without the consent of the other person; or
>
> (B) when the person knows or reasonably should know that the other person is asleep, unconscious, or otherwise unaware that the sexual act is occurring; or

> (3) commits a sexual act upon another person when the other person is incapable of consenting to the sexual act due to—

>> (A) impairment by any drug, intoxicant, or other similar substance, and that condition is known or reasonably should be known by the person; or
>>
>> (B) a mental disease or defect, or physical disability, and that condition is known or reasonably should be known by the person;

> is guilty of sexual assault and shall be punished as a court-martial may direct.

The article defines "consent" as "a freely given agreement to the conduct at issue by a competent person" and explicitly states that "[a]ll the surrounding circumstances are to be considered in determining whether a person gave consent." Article 120(g)(7)(A), (C), UCMJ. The article separately defines "incapable of consenting" as meaning that a person is "incapable of appraising the nature of the conduct at issue" or "physically incapable of declining participation in, or communicating unwillingness to engage in, the sexual act at issue." Article 120(g)(8), UCMJ.

In this case, the Government charged Appellant under Article 120(b)(2)(A), UCMJ, which criminalizes sexual assault "without the consent" of a victim. The Government defends its choice by arguing that the plain language of subsection (b)(2)(A) permits it to meet its burden of proof with evidence of JW's *lack of capacity* to consent due to her level of intoxication. The Government dismisses Appellant's due process concerns, arguing that he was convicted of precisely the crime with which he was charged—sexual assault without consent—and that nothing prevents

Congress from enacting overlapping criminal statutes that provide the Government with multiple theories of liability.

Our analysis begins, as it must, with the text of the statute. It is true, as the Government argues, that the language of subsection (b)(2)(A) does not expressly foreclose the Government from proving that JW did not consent by presenting evidence that she was incapable of consenting. But it is also true, as Appellant argues, that nothing in the language of subsection (b)(2)(A)—or in any other part of the article—forecloses Appellant's interpretation that subsection (b)(2)(A) presumes that the victim was capable of consenting. However, when we look beyond the specific language of subsection (b)(2)(A) and examine the "the specific context in which that language is used, and the broader context of the statute as a whole," we do not believe that subsection (b)(2)(A) can be read as broadly as the Government suggests. *McPherson*, 73 M.J. at 395 (internal quotation marks omitted) (quoting *Robinson*, 519 U.S. at 341).

Our analysis is guided by this Court's decision in *Sager*, 76 M.J. 158. There, the Court examined the language of Article 120(b)(2)(B), UCMJ, which criminalized a sexual act upon another person "when the person knows or reasonably should know that the other person is asleep, unconscious, or otherwise unaware that the sexual act is occurring." *Id.* at 161. The Court rejected the Government's argument that the phrase "asleep, unconscious, or otherwise unaware" created a single theory of criminal liability. *Id.* at 161-62. Noting Congress's use of the disjunctive "or" and applying the "ordinary meaning" canon of statutory construction, the Court held that "asleep," "unconscious," and "otherwise aware" reflected separate theories of liability. *Id.* ("In ordinary use the word 'or' . . . marks an alternative which generally corresponds to the word 'either.'") (alteration in original) (internal quotation marks omitted) (quoting Earl T. Crawford, *The Construction of Statutes* § 188 (1940))). The Court further noted that the Government's theory would violate the canon against surplusage, by stripping the words "asleep," "unconscious," and "or" of any meaning. *Id.* at 162 ("[T]he canon against surplusage

is strongest when an interpretation would render superfluous another part of the same statutory scheme." (quoting *Yates v. United States*, 574 U.S. 528, 543 (2015))).

The same logic applies to the Government's argument in this case. Under the Government's theory, every sexual act committed upon a victim who is incapable of consenting under subsection (b)(3)(A) would also qualify as a sexual assault under subsection (b)(2)(A) because the victim did not consent. The Supreme Court, however, has repeatedly instructed that courts must "give effect, if possible, to every word of a statute." *See, e.g., Roberts v. Sea-Land Services, Inc.*, 566 U.S. 93, 111 (internal quotation marks omitted) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). The Government's preferred approach would defy this guidance by rendering subsection (b)(2)(A) "practically devoid of significance," *Leocal v. Ashcroft*, 543 U.S. 1, 12 (2004), and relegating subsection (b)(3)(A) to mere surplusage without any purpose or effect.

Rendering subsection (b)(3)(A) as surplusage would be especially problematic because it would allow the Government to circumvent the mens rea requirement that Congress specifically added to the offense of sexual assault of a victim who is incapable of consenting. To achieve a conviction under subsection (b)(3)(A), the Government must prove not only that the victim was incapable of consenting *but also* that the victim's condition was known or reasonably should have been known by the accused. However, because subsection (b)(2)(A) only requires that the sexual act be performed "without the consent" of the victim (regardless whether the accused knew or should have known of that condition), if the Government can establish the absence of consent by proving that the victim was incapable of consenting, then the Government can obtain an incapable-of-consent conviction under subsection (b)(2)(A) without proving the accused's mens rea beyond a reasonable doubt. Indeed, this is exactly what may have happened in Appellant's case. The military judge may have convicted Appellant of sexual assault on the theory that JW was incapable of consenting without the Government proving

that Appellant knew or should have known that she was incapable. We agree with Appellant that this possibility raises serious due process concerns.

To avoid these concerns, and consistent with the language and structure of Article 120, UCMJ, we hold that subsection (b)(2)(A) and subsection (b)(3)(A) establish separate theories of liability. Subsection (b)(2)(A) criminalizes the performance of a sexual act upon a victim who is capable of consenting but does not consent. Subsection (b)(3)(A) criminalizes the performance of a sexual act upon a victim who is incapable of consenting to the sexual act due to impairment by any drug, intoxicant, or other similar substance when the victim's condition is known or reasonably should be known by the accused. Of course, nothing prevents the Government from charging a defendant with both offenses under inconsistent factual theories and allowing the trier of fact to determine whether the victim was capable or incapable of consenting. *See United Staes v. Elespuru*, 73 M.J. 326, 330 (C.A.A.F. 2014) (recognizing that the "complexity of Article 120, UCMJ, . . . make[s] charging in the alternative an unexceptional and often prudent decision"). But what the Government cannot do is charge one offense under one factual theory and then argue a different offense and a different factual theory at trial. Doing so robs the defendant of his constitutional "right to know what offense and under what legal theory he will be tried and convicted." *United States v. Riggins*, 75 M.J. 78, 83 (C.A.A.F. 2016) (citation omitted) (internal quotation marks omitted).

### 2. Legal Sufficiency of Appellant's Conviction

To convict Appellant of sexual assault in violation of Article 120(b)(2)(A), UCMJ, the Government was required to prove beyond a reasonable doubt that Appellant: (1) committed a sexual act upon JW, and (2) that Appellant did so "without the consent" of JW. Here, it is undisputed that Appellant committed a sexual act upon JW. And even though there is no direct evidence that Appellant engaged in sexual intercourse "without the consent" of JW, the Government presented significant circumstantial evidence on

the point.[3] Nevertheless, we agree with Appellant that some of the Government's arguments at trial raise significant due process concerns about his conviction.[4]

To prove the absence of consent, trial counsel:

- Argued not only that JW would not have consented but also that JW was incapable of consenting due to alcohol intoxication.

- Presented the testimony of an expert witness who estimated that JW's blood alcohol level was between 0.175 and 0.19 at the time of the sexual act and opined that JW would have had diminished mental capacity.

- Pointed to the testimony of multiple witnesses, saying "[e]veryone who had any interaction with [JW] knew she was too intoxicated to function that night," and that their testimony confirmed that JW "met the definition of an incompetent person before the accused took her to his room."

- Argued that the barracks CCTV footage showed that when JW went to Appellant's room, she

---

[3] This evidence includes: (1) testimony that JW had no prior relationship with Appellant; (2) testimony that JW would never have sex while on her period; (3) testimony that JW would not have pushed a tampon so far inside of herself; (4) testimony that JW made a morning-after report to the CQ desk after she realized something was wrong; (5) testimony that JW was upset; (6) testimony that Appellant initially denied that he had engaged in any sexual acts with JW; and (7) testimony that JW locked herself in Appellant's bathroom.

[4] In his supplement to his petition for review, Appellant asked this Court to decide whether his "conviction for sexual assault without consent should be reversed?" Appellant argued both that his conviction was legally insufficient and that there had been a constructive amendment to the charged offense. This Court granted review only of the legal sufficiency issue. *Mendoza*, 84 M.J. at 105 (order granting review). Accordingly, we consider any due process concerns only through the narrow lens of legal sufficiency.

"was completely out of it. She's stumbling. She's walking into the walls, bumping into objects, and she has no idea what's going on here."

- Pointed to Appellant's own statements in which Appellant admitted that JW was "really drunk" and that "she wasn't able to give consent."

The Government's arguments before this Court also make clear that the Government presented this evidence at trial to establish that JW was incapable of consenting and therefore there was an absence of consent.[5] But as we explained above, that is a different theory of criminal liability and a different offense than the one the Government charged.

Under the actual charged offense, Article 120(b)(2)(A), UCMJ, it is not clear how the evidence of JW's intoxication factored into either the decision of the military judge or the opinion of the ACCA. With respect to the military judge, the Government states: "Whether Ms. JW was completely incapacitated by alcohol or whether she was merely intoxicated to a point that her resistance was significantly reduced was a question of fact properly before the military judge for consideration." But nothing in the record indicates whether the military judge found that JW was capable of consenting but did not, or that JW was incapable of consenting and thus could not. Similarly, in upholding the factual sufficiency of Appellant's conviction, the ACCA relied on several factors, including "the victim's high level of intoxication." *Mendoza*, 2023 CCA LEXIS 198, at *8, 2023

---

[5] *See* Brief of Appellee at 8, *United States v. Mendoza*, No. 23-0210 (C.A.A.F. Dec. 26, 2023) ("evidence that a victim could not consent, is also evidence that they did not consent"); *id.* at 12 ("The service courts of criminal appeals (CCAA) [sic] agree that the government may meet its burden of proving 'without consent' by relying mainly on evidence of extreme intoxication" (footnote omitted)); *id.* at 20 ("the direct evidence of incapacitation through intoxication, on its own, is overwhelming evidence that Ms. JW did not consent"); *id.* at 21 ("If someone is incapable of giving consent, clearly this is a factor in determining whether there was consent.").

WL 3540415, at \*3. The ACCA's express reliance on the evidence of JW's intoxication—without any explanation of how or why that evidence factored into its analysis—raises serious questions about the legal and factual sufficiency of Appellant's conviction.

Of course, we are mindful that the ACCA did not have the benefit of our decision holding that Article 120(b)(2)(A), UCMJ, and Article 120(b)(3)(A), UMCJ, establish separate theories of liability. This likely explains the lack of clarity in the ACCA's decision with respect to how it viewed and used the evidence of JW's intoxication. And although this Court does not review the factual sufficiency of convictions when we review cases under Article 67, UCMJ, 10 U.S.C. § 867 (2018), we "retain the authority to review factual sufficiency determinations of the CCAs for the application of 'correct legal principles,' but only as to matters of law."[6] *United States v. Clark*, 75 M.J. 298, 300 (C.A.A.F. 2016) (quoting *United States v. Leak*, 61 M.J. 234, 241 (C.A.A.F. 2005)). Indeed, in the past we have remanded cases when there is an "open question" whether the CCA's factual sufficiency analysis applied correct legal principles. *United States v. Thompson*, 83 M.J. 1, 5 (C.A.A.F. 2022) (quoting *United States v. Nerad*, 69 M.J. 138, 147 (C.A.A.F. 2010)).

In our view, the ACCA's opinion presents an open question whether it improperly considered the evidence of JW's intoxication as proof of JW's inability to consent and therefore proof of the absence of consent. To be clear, our holding—that subsection (b)(2)(A) and subsection (b)(3)(A) create separate theories of liability—does not bar the trier of

---

[6] Congress amended Article 67(c), UCMJ, in 2021, but that amendment only applies to offenses that occurred on or after January 1, 2021. William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 542(e)(2), 134 Stat. 3388, 3612-13. Because the alleged offense in this case occurred in July 2020, the amended article does not apply to this case. This opinion makes no comment on what changes, if any, that amendment had on this Court's authority to review the factual sufficiency of offenses committed after January 1, 2021.

fact from considering evidence of the victim's intoxication when determining whether the victim consented. *See* Article 120(g)(7)(C), UCMJ ("All the surrounding circumstances are to be considered in determining whether a person gave consent."). Nothing in the article bars the Government from offering evidence of an alleged victim's intoxication to prove the absence of consent.[7] Conversely, nothing bars the defense from offering the same evidence to sow reasonable doubt.[8] But what the Government cannot do is prove the absence of consent under Article 120(b)(2)(A), UCMJ, by merely establishing that the victim was too intoxicated to consent.

In this case, the Government argued that the evidence established both that JW would not have consented to the sexual act and that she was incapable of consenting to the sexual act. The ACCA's opinion affirming Appellant's conviction did not specify whether the ACCA found that JW was capable of consenting, stating only that the evidence established that Appellant engaged in sexual intercourse with a victim whom he knew to be "highly intoxicated." *Mendoza,* 2023 CCA LEXIS 198, at *10, 2023 WL 3540415,

---

[7] In this case, the Government argues that evidence of a victim's intoxication may be used to show that alcohol was used "to reduce a victim's resistance." Brief of Appellee at 17 n.12, *United States v. Mendoza*, No. 23-0210 (C.A.A.F. Dec. 26, 2023) (citation omitted) (internal quotation marks omitted).

[8] *See United States v. Mendoza*, __ M.J. __, __ (20) (C.A.A.F. 2024) (Sparks, J. concurring in part and dissenting in part and in the judgment) ("Given the expert and lay testimony presented at trial, evidence of [the victim's] intoxication provides more basis for reasonable doubt than it does circumstantial evidence that she did not consent."); *see also* Christine Chambers Goodman, *Protecting the Party Girl: A New Approach for Evaluating Intoxicated Consent*, 2009 B.Y.U. L. Rev. 57, 76 (2009) (recognizing "that men as well as women can become more aggressive after consuming alcohol" (citation omitted)); Lori E. Shaw, *Title IX, Sexual Assault, and the Issue of Effective Consent: Blurred Lines—When Should "Yes" Mean "No"?*, 91 Ind. L.J. 1363, 1372 (2016) (noting that alcohol can lead to escalatory sexual contact and an ultimate feeling that something went "terribly wrong").

at *3. Recognizing the significance of our holding with respect to Article 120(b)(2)(A), UCMJ, and the prominent role intoxication evidence played in Appellant's trial, we believe that the ACCA should reconsider the factual and legal sufficiency of Appellant's conviction in light of this opinion. Remanding to the ACCA will also give the parties a full and fair opportunity to be heard on the legal and factual sufficiency of Appellant's conviction under Article 120(b)(2)(A), UCMJ.

We therefore set aside the ACCA's decision and remand the case for a new review under Article 66, UCMJ, 10 U.S.C. § 866 (2018). We express no view on whether the evidence is factually or legally sufficient to support Appellant's conviction for a violation of Article 120(b)(2)(A), UCMJ, and instead leave that question for the ACCA to decide.

### III. Conclusion

The decision of the United States Army Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General of the Army for remand to the United States Army Court of Criminal Appeals for a new factual and legal sufficiency review under Article 66, UCMJ, 10 U.S.C. § 866 (2018).

Judge SPARKS, concurring in part and dissenting in part and in the judgment.

I join part II(B)(1) of the majority opinion because I agree with the majority that Article 120(b)(2)(A), UCMJ, and Article 120(b)(3)(A), UCMJ, create separate theories of criminal liability. 10 U.S.C. § 920 (2018). The majority acknowledges, correctly in my opinion, that "[t]he Government's approach—which conflated two different and inconsistent theories of criminal liability—raises significant due process concerns." *United States v. Mendoza*, __ M.J. __, __ (3) (C.A.A.F. 2024). And I am in complete agreement with the majority that:

> what the Government cannot do is charge one offense under one factual theory and then argue a different offense and a different factual theory at trial. Doing so robs the defendant of his constitutional "right to know what offense and under what legal theory he will be tried and convicted."

*Id.* at __ (13) (quoting *United States v. Riggins*, 75 M.J. 78, 83 (C.A.A.F. 2016)). The majority even goes so far as to explain that in this case "[t]he military judge may have convicted Appellant of sexual assault on the theory that JW was incapable of consenting without the Government proving that Appellant knew or should have known that she was incapable." *Id.* at __ (12-13). Again, I agree.

It is in deciding where we go from this point that the majority and I disagree. Instead of finding that the evidence is legally insufficient or that Government violated Appellant's due process right to fair notice by arguing an uncharged factual and legal theory of liability at trial and testing the error for prejudice, the majority instead concludes that the appropriate remedy in this case is to remand the case to the United States Army Court of Criminal Appeals (ACCA) for a new legal and factual sufficiency review in which the ACCA can explain "how or why the evidence of JW's intoxication factored into its analysis." *Id.* at __ (3). With this I cannot agree.

First, I believe that the majority misconstrues Appellant's argument when it claims that he "argues that the evidence was legally insufficient because the Government

*United States v. Mendoza*, No. 23-0210/AR
Judge SPARKS, concurring in part and dissenting
in part and in the judgment

relied solely on circumstantial evidence." *Id.* at __ (6-7). Appellant does not argue that the Government can never prove lack of consent by circumstantial evidence. Rather, he argues that when the Government charges "without consent" the burden of proof rests upon the Government to present legally sufficient evidence that affirmatively points to a lack of consent vice evidence that points to a lack of capacity to consent—a separate factual and legal theory. Brief of Appellant at 19-20, *United States v. Mendoza*, No. 23-0210 (C.A.A.F. Nov. 27, 2023).[1] In short, Appellant argues that the Government failed to present legally sufficient evidence that the victim did not consent, despite the evidence presented that she may have been incapable of consent. He further argues that to affirm his conviction using evidence of an uncharged factual and legal theory would violate his due process right to fair notice. I agree—and I believe the majority does as well.

Nevertheless, the majority concludes that the correct result here is to remand this case to the ACCA for a new legal and factual sufficiency review in light of this opinion. Just how the ACCA's review must change is not entirely clear. On the one hand, the majority states, "[u]nder the actual charged offense, Article 120(b)(2)(A), UCMJ, it is not clear how the evidence of JW's intoxication factored into either the decision of the military judge or the opinion of the ACCA." *Mendoza*, __ M.J. at __ (15). However, the majority later explains that its holding "does not bar the trier of fact from considering evidence of the victim's

---

[1] Similarly, in dissenting from the ACCA opinion in this case, Senior Judge Walker explained, "[t]he charged offense requires the government to affirmatively prove the victim *did not consent* and the government failed to satisfy its burden on this essential element." *United States v. Mendoza*, No. ARMY 20210647, 2023 CCA LEXIS 198, at *14, 2023 WL 3540415, at *5 (A. Ct. Crim. App. May 8, 2023) (unpublished) (Walker, S.J., dissenting). Senior Judge Walker further explained, "[t]he government cannot rely exclusively on the victim's lack of memory due to intoxication as a proxy for satisfying its burden to prove a lack of consent, which is what occurred in this case." *Id.* at *15, 2023 WL 3540415, at *6.

*United States v. Mendoza*, No. 23-0210/AR
Judge SPARKS, concurring in part and dissenting
in part and in the judgment

intoxication when determining whether the victim consented." *Id.* at __ (16-17) ("All the surrounding circumstances are to be considered in determining whether a person gave consent." (internal quotation marks omitted) (quoting Article 120(g)(7)(C))). To that end, the majority does not appear concerned that the ACCA considered evidence of JW's intoxication, but only "whether it *improperly considered* the evidence of JW's intoxication as proof of JW's inability to consent and therefore proof of the absence of consent." *Id.* at (16) (emphasis added).

The majority's focus on whether the ACCA properly considered evidence of JW's intoxication in determining whether the Government presented sufficient evidence to convict Appellant of the charged crime ignores the real issue in this case—the Government's violation of Appellant's due process right to fair notice by charging Appellant with sexual assault without consent, but arguing at trial that he was guilty because JW was incapable of consent. This does not merely raise serious due process concerns. This is a violation of Appellant's due process right to fair notice. No explanation from the ACCA about how it considered the evidence of JW's intoxication will change the fact that Appellant's due process rights were violated at trial, long before this case reached the ACCA.

For the reasons explained below, I believe that the only options in this case are for this Court to find the evidence legally insufficient or, if the evidence is legally sufficient, to find that the Government violated Appellant's due process right to fair notice. Both routes require reversal. Neither leads to a second legal and factual sufficiency review by the ACCA. After reviewing the record in this case, I find the evidence is legally insufficient to affirm Appellant's conviction and would dismiss this case with prejudice. I therefore respectfully dissent.

### I. Background

Given the nature of legal sufficiency review and the low bar to uphold a conviction, I believe it is necessary to explain the facts in detail. I apologize for restating facts already addressed by the majority, but I believe it is

*United States v. Mendoza*, No. 23-0210/AR
Judge SPARKS, concurring in part and dissenting
in part and in the judgment

necessary to paint the complete picture of this case before reviewing the legal question at issue.

Appellant and JW were both stationed at Camp Casey, in South Korea. On the evening of July 11, 2020, JW went out to dinner with friends. She testified about what she remembers from that night after getting back from dinner as follows: "I remember getting back to the barracks, there's a whole bunch of people out front drinking and whatnot, and I remember seeing Sergeant [B] from S2, and he had a bottle of vodka. I remember drinking that and that's the last thing I remember from that night."

She testified that her final memories from that evening were around 11:00 p.m. The next thing she remembered was waking up to a knock on her barrack's room door the following morning.

It is undisputed that JW was intoxicated that evening. It is also undisputed that JW has no memory of having sex with Appellant and could not testify whether she consented to having sex with Appellant. Instead, her testimony consisted of claims that she would not have consented to sex with Appellant under the circumstances, including her lack of a social relationship with Appellant and the fact that she was menstruating at the time.

Video evidence presented at trial clearly shows Appellant and JW entering Appellant's room at approximately 2:08 a.m. on July 12, 2020. Before entering the room, JW appeared to be intoxicated, but seemed aware of what was happening and was able to walk on her own. As they approached Appellant's room, Appellant touched JW's crotch. This touching constituted the basis for the abusive sexual contact specification of which Appellant was found not guilty.

Appellant and JW remained in the room for slightly more than one hour, leaving the room at 3:11 a.m. At that point, JW was leaning on Appellant as they walked back to her room. While JW was not walking on her own, she was walking with Appellant's assistance and not simply being carried by Appellant, who is smaller in stature than JW.

*United States v. Mendoza*, No. 23-0210/AR
Judge SPARKS, concurring in part and dissenting
in part and in the judgment

JW awoke the following morning to a knock on her door. She answered the door and was greeted by Appellant, who returned her shoes to her. According to JW, she did not recognize Appellant and had no prior social interaction with him. She went back to sleep but awoke again to Appellant knocking. This time he asked if she was sure she was okay. It was at this point that JW realized she was no longer wearing her underwear from the previous night, despite still wearing her pants from the previous night.[2] She went to the bathroom and discovered that her tampon had been pushed all the way inside her body. JW began to panic and eventually went to the hospital and underwent a sexual assault forensic examination, which included obtaining DNA swabs from her vagina. According to her testimony at trial, JW "filed a report just to figure out what had happened." The DNA test confirmed that she and Appellant engaged in sexual intercourse.

## A. Appellant's Confession

Appellant was interviewed by Army Criminal Investigation Division Special Agent (SA) Dereck Williams. SA Williams first spoke to Appellant when he was canvassing the barracks. During this informal interview in the parking lot, Appellant told SA Williams that JW had been in his room the prior night. After later identifying Appellant as a suspect, SA Williams formally interrogated Appellant in a recorded interview.

During the interview Appellant admitted that JW was extremely intoxicated, but he initially denied having sexual relations with her. After being confronted with the

---

[2] JW admitted at trial that the sports bra and underwear she had been wearing the previous night were located on the floor of her room. JW's testimony also suggests that she had been wearing a pad rather than a tampon on the night of the assault, because she describes the photo showing her underwear as "that is a photo of the underwear I was wearing with the pad I had been wearing." JW also admitted that she could not recall when she put her tampon in, claiming "it would have been the day prior," which suggests it happened during the period of time for which she has no memory.

*United States v. Mendoza*, No. 23-0210/AR
Judge SPARKS, concurring in part and dissenting
in part and in the judgment

CCTV footage of them entering his room, Appellant admitted that they had sex, but claimed it was consensual. He then admitted that he knew she was too intoxicated to consent and made a written confession. In his written confession, Appellant explained that he and JW began to flirt while they were drinking in the day room:

> She leaned in and was whispering in my ear and kissing my neck and I pulled away initially however, became overwhelmed with emotion to give in and ignore all the signs and my own words [warning SGT RC that she was intoxicated]. I invited her down to my room and she followed in the process [I] groped her groin and thigh in the hallway. When we came into the room she initially sat on the bed and I the couch after a bit of conversation I got up to get a beer and we kissed, while kissing I asked her "is this okay?" she replied "show me what you got." We both began to remove clothing individually and I proceeded to lie down on the bed, she proceeded to give me oral sex and then I asked her to lie on her back. I then asked her to get ontop [sic] of me, then I asked her to once again lie on her back. . . . She then went into the bathroom and closed the door and turned the shower on while she went to throw up. She did not throw up and [I] knocked on the door asking if she was ok twice both time [sic] she said she was ok. She opened the door the second time and fell back onto the toilet and I had to help her up, she then fell back again and I then helped her up out of the bathroom and onto my sink.

In response to specific questions from SA Williams, Appellant admitted that JW was "[o]verly intoxicated," that she was not capable of giving consent when they had sex, and that he knew "it was wrong to conduct sex acts on SPC [JW] when she was incapable of giving consent."

### B. The Charge

The Government charged Appellant with committing a sexual act upon JW, by penetrating her vulva with his penis, without her consent, in violation of Article 120(b)(2)(A), UCMJ. Appellant was not charged with sexual assault while the victim was incapable of consenting due to

*United States v. Mendoza*, No. 23-0210/AR
Judge SPARKS, concurring in part and dissenting
in part and in the judgment

impairment by an intoxicant, in violation of Article 120(b)(3)(A), UCMJ.[3]

## C. Trial

At trial, the Government argued that the evidence would show that Appellant committed the charged sexual acts without JW's consent. JW testified that she did not remember having sex with Appellant, but that she would never have had sex while on her period, nor would she have had sex with her tampon in.

The Government presented expert testimony from Dr. RW, an expert in forensic biology with an emphasis on the effects of alcohol on behavior. Dr. RW testified that a "blackout" from drinking can involve either partial or total memory loss for a portion of the drinking episode. He explained that blackouts typically occur at a blood alcohol content (B.A.C.) of .14 of higher, with total memory loss typically occurring at .2 or higher. Dr. RW estimated the victim's B.A.C. on the night in question was between .175 and .19.

Additionally, Dr. RW testified that individuals in a state of blackout can still engage in voluntary behavior. Dr. RW explained that after a blackout individuals attempt to piece together what happened during that period of time:

> And oftentimes they're doing that based on their own personal values. So oftentimes it's, you know, I typically do this, but, you know, so that must be what happened kind of situation. So that's how a person often tries to put together the pieces of the memory. And then oftentimes they may find out from another person, when finding out what exactly happened during that memory, that it might not be what they expected because of alcohol.

Dr. RW also explained that "as the blood alcohol level increases, a person may become more reckless, acts in

---

[3] The Government also charged Appellant with one specification of abusive sexual contact without consent, in violation of Article 120(d), UCMJ, for touching JW's groin without her consent. Appellant was found not guilty of that specification.

*United States v. Mendoza*, No. 23-0210/AR
Judge SPARKS, concurring in part and dissenting
in part and in the judgment

sexually provocative ways or aggressive, and it also impairs a person's reaction time, comprehension, and motor movements."

Dr. RW viewed the CCTV footage in this case and commented upon JW's demeanor before and after she entered Appellant's room:

> So in reviewing the CCTV footage, I noticed there's a significant difference when [JW] left her room, I guess it was at about 1:47 and started to walk with—to [Appellant's] actual room. She was much more—she didn't appear to have a solid gait. So she had an uneven gait. She seemed a little bit staggery, but she was in stark contrast to what you saw once she left [Appellant's room], where she appeared to be much more sedated, where she was hanging on him and kind of being dragged along a little bit more. So that was just a stark difference between the two. And with that, it just made me think, you know, it's very much like the biphasic effects of alcohol . . . we call it the biphasic effects because you actually see a rise in the B.A.C., and during that rise, that's usually called the ascending limb, that's more stimulating. That's the more outgoing, the more talkative. And each person's slope can be different depending on what they're drinking or their weight. A lot of different factors.
>
> And then once a person stops drinking, there's about 30 to 45 minutes where the alcohol is being absorbed just to a person to reach their peak. That's their peak B.A.C. And then at that point, the body starts to, you know—really the liver, starts to process and get rid of all that alcohol in the system. And that's when you start to see some of those withdrawal. Essentially, your body's going into alcohol withdrawal, the sedating effects. So you see a lot more of the person nodding off. A person really, really just looking sedated compared to what they were like when they were actually consuming alcohol.

Finally, Dr. RW testified that JW had Benadryl in her system, which could explain her steep decline from the point of entering Appellant's room to the time she left, if

*United States v. Mendoza*, No. 23-0210/AR
Judge SPARKS, concurring in part and dissenting
in part and in the judgment

she took it during the time she was in her own room around
1:45 a.m.

### D. Government's Closing Argument

During closing argument trial counsel argued, "[w]ith
regard to consent, as you heard, [the victim] would not con-
sent. *She could not.* She did not consent." (Emphasis
added.) Trial counsel also argued, the victim "testified that
she would not consent under those circumstances." As trial
counsel continued, he seemed to conflate blacking out with
an inability to consent, claiming, JW "could not consent un-
der the circumstances. As she testified, she blacked out be-
fore 0145, while she was still outside, before Specialist [L]
went to retrieve her."

When he discussed the legal definition of consent, trial
counsel focused on the definition of "competent person" and
all the evidence the military judge should consider to con-
clude that JW was not competent to consent to the sexual
acts in question. "In other words," he concluded, "every eye-
witness confirmed that Specialist [JW] was [sic] clearly—
met the definition of an incompetent person before the ac-
cused took her to his room. And most importantly is that
the accused knew it too."

For all intents and purposes, the Government's argu-
ment at trial was that JW did not consent to the charged
sexual acts *because* she was not competent to consent given
her state of intoxication. The Government never argued,
nor did JW testify, that JW ever gave any indication to Ap-
pellant that her participation in the sexual acts was not
voluntary. Rather, the Government's sole theory of the case
was that JW "could not consent under the circumstances."

### II. Discussion

### A. Standard of Review

This Court reviews questions of legal sufficiency de
novo. *United States v. King*, 78 M.J. 218, 221 (C.A.A.F.
2019). " 'The test for legal sufficiency is whether, after
viewing the evidence in the light most favorable to the pros-
ecution, any rational trier of fact could have found the

*United States v. Mendoza*, No. 23-0210/AR
Judge SPARKS, concurring in part and dissenting
in part and in the judgment

essential elements of the crime beyond a reasonable doubt.' "[4] *United States v. Gutierrez*, 73 M.J. 172, 175 (C.A.A.F. 2014) (quoting *United States v. Bennitt*, 72 M.J. 266, 268 (C.A.A.F. 2013)). "This legal sufficiency assessment draw[s] every reasonable inference from the evidence of record in favor of the prosecution." *King*, 78 M.J. at 221 (alteration in original) (internal quotation marks omitted) (quoting *United States v. Robinson*, 77 M.J. 294, 298 (C.A.A.F. 2018)). As such, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *Id.* (quoting *United States v. Navrestad*, 66 M.J. 262, 269 (C.A.A.F. 2008) (Effron, C.J., joined by Stucky, J., dissenting)). "The criterion thus impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

In order to meet its low burden of establishing legal sufficiency in this case, the Government relies on evidence that JW was incapable of consenting to prove that she did not consent. As the majority opinion acknowledges, "there is no direct evidence that Appellant engaged in sexual intercourse 'without the consent' of JW." *Mendoza*, __ M.J. at __ (13-14). Nonetheless, the Government interprets the theories of sexual assault without consent and sexual assault while the victim is incapable of consent under Article

---

[4] The majority claims that this case "departs from the usual 'reasonable trier of fact' analysis because Appellant challenges the legal sufficiency of his sexual assault conviction on two unusual grounds." *Mendoza*, __ M.J. at __ (6). However, the majority fails to explain what different standard we must now use. I disagree on this point and note that Appellant's arguments are not so unusual. Appellant simply argues that the evidence used by the Government in this case is not legally relevant because it supports an uncharged theory of liability and is therefore insufficient to support a finding of guilty. The fact that we must determine whether Appellant is correct that the Government cannot use evidence of an uncharged legal theory to prove a charged legal theory does not change the ultimate question of whether the Government did, in fact, present legally sufficient evidence for a rational trier of fact to find every element of the charge beyond a reasonable doubt.

*United States v. Mendoza*, No. 23-0210/AR
Judge SPARKS, concurring in part and dissenting
in part and in the judgment

120 as overlapping. Like the majority, I reject this interpretation for a number of reasons.

First, the Government's argument that proof of incapacity necessarily means proof of a lack of consent violates the statutory interpretation canon against surplusage by rendering all theories of sexual assault other than without consent superfluous. Second, contrary to the Government's argument, the legal theories of lack of consent and incapacity are legally contradictory rather than overlapping. And third, the Government violates a defendant's due process right to fair notice when it convicts him using a legal theory that was not charged.

### B. The Government Argued at Trial That the Victim Was Incapable of Consenting

In this case, Appellant argues that there is no evidence in the record that JW did not consent to the sexual activity. On the other hand, the Government argues that "there was ample direct evidence that [JW] was incapable of consent and strong circumstantial evidence that [JW] did not consent." Brief of Appellee at 11, *United States v. Mendoza,* No. 23-0210 (C.A.A.F. Dec. 26, 2023). However, as explained above, the Government's argument to this Court that there is strong circumstantial evidence that JW did not consent was never made at trial. Rather, the Government's entire argument at trial was that JW was incompetent and therefore could not consent to sex.

The Government now argues to this Court that "evidence that a victim could not consent, is also evidence that [she] did not consent." *Id.* at 8. Therefore, we must determine whether evidence of a victim's incompetence necessarily proves a lack of consent in the context of Article 120(b)(2)(A) before we can determine whether the Government presented enough evidence to reach the low threshold of legal sufficiency for a charge of sexual assault without consent. For the reasons explained below, I believe that that evidence of a victim's incompetence is not evidence of a lack of consent.

*United States v. Mendoza*, No. 23-0210/AR
Judge SPARKS, concurring in part and dissenting
in part and in the judgment

## C. Canon Against Surplusage

I agree with the majority that the Government's interpretation of Article 120, UCMJ, violates the canon against surplusage. While I wish to avoid repeating the majority opinion's analysis, I still find it necessary to examine the statutory scheme of Article 120, UCMJ, before moving on to the next portion of my opinion in order to be clear about what relevance, if any, evidence of JW's intoxication has to proving a charge of without consent.

Congress has articulated multiple legal theories of sexual assault. These can be broken down into three basic categories: (1) sexual assault when a victim is physically capable of consent but not legally capable of consent due to circumstances created by the accused;[5] (2) sexual assault when the victim is capable of consenting and does not consent;[6] and (3) sexual assault when the victim is physically incapable of consent and that condition is known or reasonably should be known by the accused.[7]

---

[5] Article 120(b)(1)(A), UCMJ—"threatening or placing that other person in fear;" Article 120(b)(1)(B), UCMJ—"making a false representation that the sexual act serves a professional purpose;" or Article 120(b)(1)(C), UCMJ—"inducing a belief by any artifice, pretense, or concealment that the person is another person."

[6] Article 120(b)(2)(A), UCMJ—"without . . . consent."

[7] Article 120(b)(2)(B), UCMJ—"when the person knows or reasonably should know that the other person is asleep, unconscious, or otherwise unaware"; Article 120(b)(3)—

> commits a sexual act upon another person when the other person is incapable of consenting to the sexual act due to—
>
> > (A) impairment by any drug, intoxicant, or other similar substance, and that condition is known or reasonably should be known by the person; or
> >
> > (B) a mental disease or defect, or physical disability, and that condition is known or reasonably should be known by the person.

*United States v. Mendoza*, No. 23-0210/AR
Judge SPARKS, concurring in part and dissenting
in part and in the judgment

According to the Government's interpretation of Article 120, all theories of sexual assault committed when the victim is legally or physically incapable of consent could be charged under the single theory that the victim did not consent. If, as the Government argues, evidence of an inability to consent is evidence of a lack of consent, the government could prove a lack of consent by proving that the victim was legally or physically incapable of consenting to the alleged conduct. Were this the case, there would be no need for the government to ever charge sexual assault when a victim is incapable of consent because it could simply prove a charge of sexual assault without consent using evidence of legal or physical incapacity.

Because the Government's interpretation would make every part of the statute articulating a theory of criminality except "without consent" unnecessary, the majority correctly rejects this interpretation.

Furthermore, as the majority opinion points out, allowing the government to charge sexual assault without consent and to argue an incapacity theory would allow the government to avoid the obligation of proving beyond a reasonable doubt that the victim was actually incapable of consenting, and that the accused knew or reasonably should have known of the victim's incapacity, which I will address in the next section.

### D. Lack of Consent and Incapacity Are Contradictory Theories of Criminality

The majority and I agree that Articles 120(b)(2)(A) and 120(b)(3)(A) present distinct factual and legal theories of sexual assault. However, as the majority points out, "nothing prevents the Government from charging a defendant with both offenses under inconsistent factual theories and allowing the trier-of-fact to determine whether the victim was capable or incapable of consenting." *Mendoza*, __ M.J. at __ (13) (citing *United States v. Elespuru*, 73 M.J. 326, 330 (C.A.A.F. 2014)). Therefore, I find it necessary to examine the distinctions between these separate factual and legal theories of liability to determine the legal and logical relevance of the evidence presented in this case. As the

*United States v. Mendoza*, No. 23-0210/AR
Judge SPARKS, concurring in part and dissenting
in part and in the judgment

majority points out, the majority's holding "does not bar the trier of fact from considering evidence of the victim's intoxication when determining whether the victim consented." *Id.* at __ (16-17) (citing Article 120(g)(7)(C), UCMJ). Given this permissible use of circumstantial evidence, we must examine whether direct evidence of JW's intoxication constitutes logically and legally relevant circumstantial evidence that JW did not, in fact, consent to the sexual activity in this case.

To prove a charge of sexual assault without consent the government is required to prove that (1) the accused committed a sexual act upon the victim; and (2) the victim did not consent to the sexual act. *Manual for Courts-Martial, United States* pt. IV, para. 60.b.(2)(d) (2019 ed.) (*MCM*). In order to prove a charge of sexual assault while the victim is incapable of consent the government must prove that (1) the accused committed a sexual act upon the victim; (2) while the victim is incapable of consenting; and (3) the accused knew or reasonably should have known the victim was incapable of consenting. *MCM* pt. IV, para. 60.b.(2)(e).

According to Article 120(g)(7), UCMJ:

(A) The term "consent" means a freely given agreement to the conduct at issue by a competent person. An expression of lack of consent through words or conduct means there is no consent. Lack of verbal or physical resistance does not constitute consent. Submission resulting from the use of force, threat of force, or placing another person in fear also does not constitute consent. A current or previous dating or social or sexual relationship by itself or the manner of dress of the person involved with the accused in the conduct at issue does not constitute consent.

(B) A sleeping, unconscious, or incompetent person cannot consent. A person cannot consent to force causing or likely to cause death or grievous bodily harm or to being rendered unconscious. A person cannot consent while under threat or in fear or under the circumstances described in subparagraph (B) or (C) or subsection (b)(1).

*United States v. Mendoza*, No. 23-0210/AR
Judge SPARKS, concurring in part and dissenting
in part and in the judgment

> (C) All the surrounding circumstances are to
> be considered in determining whether a person
> gave consent.

Furthermore, the term "incapable of consenting" means the person is:

> (A) incapable of appraising the nature of the
> conduct at issue; or

> (B) physically incapable of declining participa-
> tion in, or communicating unwillingness to engage
> in, the sexual act at issue.

Article 120(g)(8), UCMJ.

In his articulation of the elements of these offenses, the President has explained that legal incapacity offenses require proof of the specific circumstances (e.g., placing the victim in fear) that result in the legal incapacity to consent. *MCM* pt. IV, para. 60.b.(2)(a)-(c). He has also explained that physical incapacity offenses require specific proof that the victim was incapable of consent. *MCM* pt. IV, para. 60.b.(2)(e)-(f). In contrast, a charge of sexual assault without consent does not require the government to prove that the victim was capable of consenting. *MCM* pt. IV, para. 60.b.(2)(d). The Government acknowledges this in its brief when it admits "the government had no requirement to prove that the victim was competent; only that she did not, in fact, consent." Brief of Appellee at 28, *United States v. Mendoza*, No. 23-0210 (C.A.A.F. Dec. 26, 2023) (alterations in original removed) (internal quotation marks omitted) (quoting *United States v. Motsenbocker*, No. 201600285, 2017 CCA LEXIS 539, *17 (N-M. Ct. Crim. App. Aug 10, 2017) (unpublished)).

While it may at first blush appear logical to argue that proving the victim was incapable of consenting necessarily proves that the victim did not consent—or that evidence of JW's intoxication constitutes circumstantial evidence that she did not consent—we need look no further than the majority's explanation of the two offenses to reject this argument. "Article 120(b)(2)(A), UCMJ, criminalizes engaging in a sexual act with a person capable of consenting who did not consent, and Article 120(b)(3)(A), UCMJ, criminalizes

*United States v. Mendoza*, No. 23-0210/AR
Judge SPARKS, concurring in part and dissenting
in part and in the judgment

engaging in a sexual act with a person who is incapable of consenting . . . ." *Mendoza,* __ M.J. at __ (3). If this is so, and I believe it is, then evidence establishing the victim's incapacity necessarily disproves an allegation of sexual assault without consent. Thus, a closer look reveals that these two theories of criminality are legally contradictory rather than overlapping. Indeed, if Articles 120(b)(2)(A) and 120(b)(3)(A) constitute different and inconsistent theories of liability, as the majority claims, they must be different in the proof required and not in name only if the canon against surplusage is to mean anything.

Any incapacity theory of sexual assault requires the government to prove beyond a reasonable doubt the victim's legal or physical incapacity. When charged under an incapacity theory the accused could offer proof of the victim's competence as a defense. For example, in *Riggins*, the appellant was able to disprove what the government charged in the original sexual assault specifications "by demonstrating that, at the time of the sexual activity, [the victim] was not in fear." 75 M.J. at 82. On appeal, this Court explained that incapacity and lack of consent are different legal theories of liability because "the fact that the Government was required to prove a set of facts that resulted in [the victim]'s *legal inability to consent* was not the equivalent of the Government bearing the affirmative responsibility to prove that [the victim] *did not, in fact, consent.*" *Id.* at 84.

In contrast, as the Government acknowledges, when it charges sexual assault without consent it has no obligation to prove that the victim was competent. Unlike an incapacity theory of criminality, evidence of the victim's competency would offer no defense under a without consent theory. In other words, a charge of sexual assault without consent is equivalent to the government stipulating that the victim was competent to consent under the circumstances alleged. This is the root of the due process problem in this case. The Government charged the only theory of sexual assault for which proof of the victim's competency to consent is not a defense, then argued at trial that the victim was incapable of consenting.

*United States v. Mendoza*, No. 23-0210/AR
Judge SPARKS, concurring in part and dissenting
in part and in the judgment

Consistent with the Government's acknowledgment that a charge of sexual assault without consent does not require the Government to prove the victim's competency, it seems apparent to me that the Government would be unable to charge both theories of sexual assault—without consent and incapacity—in the alternative without necessarily disproving one charge at trial in order to prove the other. This is precisely what Appellant is getting at when he argues that the government is required to present direct evidence of a lack of consent in order to prove sexual assault under Article 120(b)(2)(A). If the government seeks to meet its burden using circumstantial evidence, it is the government's burden to demonstrate the logical relevance of such evidence to prove an element of the charge—e.g., that evidence of intoxication makes it less likely that the victim would consent.

The majority alludes to the long-standing practice of allowing the government to plead in the alternative to accommodate any contingencies of proof. *Mendoza*, __ M.J. at __ (13) (citing *Elespuru*, 73 M.J. at 330).[8] On this point, I would simply provide a cautionary note to military judges. Should they encounter such pleadings, at the close of the evidence they should make a careful determination as to which offense is supported by the evidence and which one may not be supported. Then only one of these contingent offenses should be sent to the trier of fact. After all, "[i]t is the Government's responsibility to determine what offense to bring against an accused. Aware of the evidence in its possession, the Government is presumably cognizant of which offenses are supported by the evidence and which are not." *United States v. Morton*, 69 M.J. 12, 16 (C.A.A.F. 2010).

Having explained the distinct and inconsistent nature of without consent and incapacity theories of liability, I

---

[8] In *Elespuru*, this Court evaluated the appellant's argument that his convictions for abusive sexual contact and wrongful sexual contact were multiplicious, not whether conflicting theories of liability violate the due process right to fair notice. 73 M.J. at 327.

*United States v. Mendoza*, No. 23-0210/AR
Judge SPARKS, concurring in part and dissenting
in part and in the judgment

now turn to the evidence in this case and examine whether the Government presented legally sufficient evidence of JW's lack of consent.

### E. The Government Failed to Prove Sexual Assault Without Consent

First, it has been well established that the Government argued at trial and on appeal that JW was legally incapable of consent on the night in question. If that is the case, the Government is legally incapable of proving Appellant's guilt under Article 120(b)(2)(A), UCMJ. However, despite the Government's argument on this point, no court has found as a matter of law that JW was incapable of consent. Therefore, we must now examine whether the evidence presented at trial is sufficient to prove that JW did not, in fact, consent.

It bears restating that there is no direct evidence that JW did not consent to the sexual activity that took place. The Government argues, however, that there is "strong circumstantial evidence that [JW] did not consent." Brief of Appellee at 11, *United States v. Mendoza*, No. 23-0210 (C.A.A.F. Dec. 26, 2023). Similarly, the majority, despite not reaching the question of legal sufficiency, claims that there is "significant circumstantial evidence on this point." *Mendoza*, __ M.J. at __ (13-14). According to the majority:

> This evidence includes: (1) testimony that JW had no prior relationship with Appellant; (2) testimony that JW would never have sex while on her period; (3) testimony that JW would not have pushed a tampon so far inside of herself; (4) testimony that JW made a morning-after report to the CQ desk after she realized something was wrong; (5) testimony that JW was upset; (6) testimony that Appellant initially denied that he had engaged in any sexual acts with JW; and (7) testimony that JW locked herself in Appellant's bathroom.

*Id.* at __ (14 n.3).

In making this assertion, the majority neglects important facts and makes much of evidence that is subject to multiple explanations. For example, Appellant's initial

*United States v. Mendoza*, No. 23-0210/AR
Judge SPARKS, concurring in part and dissenting
in part and in the judgment

denial of engaging in sexual acts with JW could be inter-preted as evidence of consciousness of guilt for engaging in sex with someone he believed was not capable of consent-ing—as he explained in his confession and the Government argued at trial—or it could be interpreted as evidence that he did not want to confess to extramarital sexual conduct. But it is not enough for the Government to prove that Ap-pellant had a guilty conscience, it must prove the specific elements of the crime for which Appellant feels guilty.

Appellant did admit that he knew JW was incapable of consenting. But at no point during the interview was Ap-pellant provided with a legal definition of incapacity. While Appellant's confession provides strong evidence that JW may have been too intoxicated to consent, it does not estab-lish that she did not consent. Indeed, his confession de-scribes JW as actively engaging in the sexual acts, rather than being unable to appreciate the nature of the conduct or unable to decline participation therein. *See* Article 120(g)(7) (" 'incapable of consenting' means the person is (A) incapable of appraising the nature of the conduct at is-sue; or (B) physically incapable of declining participation in, or communicating unwillingness to engage in, the sex-ual act at issue").

Similarly, evidence that JW and Appellant lacked a prior relationship, testimony from JW that she would never have sex on her period and would never push a tampon so far inside herself, and evidence that JW seemed upset all ignore the overwhelming evidence that JW was intoxicated on the night in question and acting in ways uncharacteris-tic of her normal behavior.

Nor does JW's immediate report provide any evidence that JW did not consent to the sexual acts in question. Ra-ther than reporting a sexual assault, JW testified at trial that she "filed a report just to figure out what had hap-pened." It is precisely because of JW's inability to testify that she was sexually assaulted that the Government must prove its case by circumstantial evidence.

The Government argues that the JW's intoxication is simply part of "all [the] surrounding circumstances [that]

*United States v. Mendoza*, No. 23-0210/AR
Judge SPARKS, concurring in part and dissenting
in part and in the judgment

are to be considered in determining whether a person gave consent." Brief of Appellee at 17, *United States v. Mendoza*, No. 23-0210 (C.A.A.F. Dec. 26, 2023) (internal quotation marks omitted) (quoting Article 120(g)(8)). To that end, the ACCA pointed to "the victim's high level of intoxication" as evidence supporting a finding of guilty. *Mendoza*, 2023 CCA LEXIS 198, at *8, 2023 WL 3540415, at *3. However, this conclusion is at best questionable and at worst contradicted by the expert testimony presented in this case. Specifically, the Government's expert witness Dr. RW testified that "as the blood alcohol level increases, a person may become more reckless, acts in sexually provocative ways or aggressive, and it also impairs a person's reaction time, comprehension, and motor movements." Dr. RW did not testify that an increased B.A.C. makes a person less likely to consent to sexual activity.

Dr. RW also estimated that JW's B.A.C. was between .175 to .19, which would result in her not acting like her "usual self." Indeed, Sergeant RC testified that on the night in question JW "wasn't acting like herself. Most of the encounters I've had with her she's more of just kind of an introverted, more to herself type person. This time she was more outgoing [and] started becoming flirtatious in a way." Given the expert and lay testimony presented at trial, evidence of JW's intoxication provides more basis for reasonable doubt than it does circumstantial evidence that she did not consent.

While the Government points to testimony from JW that she would not have consented under these circumstances, the video evidence in this case shows she and Appellant entered his room together while they appear to be flirting, both intoxicated. In fact, the military judge—the sole fact-finder in this case—found Appellant not guilty of the charge of abusive sexual contact alleged to have occurred just before they entered Appellant's barracks room. The CCTV footage and Appellant's admissions leave no doubt that the touching took place, so we are left to conclude that the military judge did not believe JW did not consent to the touching in the hallway, nor that she was

*United States v. Mendoza*, No. 23-0210/AR
Judge SPARKS, concurring in part and dissenting
in part and in the judgment

incapable of consenting as she entered Appellant's room (as the Government argued at trial).

Despite this finding by the military judge that necessarily finds that JW consented to sexual contact moments before entering Appellant's room, the Government would have us conclude that the evidence is sufficient for a rational trier of fact to conclude beyond a reasonable doubt that she did not consent to sexual acts that took place at some point after entering the room. Given JW's lack of memory regarding whether or not she consented, the expert testimony from Dr. RW regarding the effects of alcohol and JW's level of intoxication, and the substance of Appellant's confession, I cannot conclude that the evidence supports a finding that JW did not consent.

In sum, after viewing the evidence in the light most favorable to the prosecution, I cannot conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

### III. Conclusion

Without consent and incapacity to consent are two separate theories of criminal liability. The Government made the decision to charge Appellant with sexual assault without consent and therefore could not prove Appellant's guilt by proving that JW was incapable of consent. The fact of the matter is the Government charged Appellant with the wrong offense and proceeded to trial with evidence that supported a different uncharged offense. A due process violation occurred at trial that a remand to the lower court simply cannot cure. Further, having reviewed the record in this case, I cannot conclude that a rationale trier of fact could be satisfied beyond a reasonable doubt that JW did not consent to the sexual acts that took place after she entered Appellant's room.

For these reasons, I respectfully dissent from the decision to remand and would dismiss Appellant's conviction with prejudice.

Judge MAGGS, concurring in part and dissenting in part.

I concur with the Court's interpretation of Article 120(b)(2)(A), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920(b)(2)(A) (2018). I disagree, however, with one aspect of the Court's disposition of this appeal. Specifically, while the Court remands the case for both a new legal and factual sufficiency review, I would hold that the evidence is legally sufficient and remand solely for a new factual sufficiency review. I therefore respectfully concur in part and dissent in part.

## I. Background

In the supplement to his petition for review, Appellant asked this Court to decide "[w]hether [his] conviction for sexual assault without consent should be reversed?" He asserted that this Court should set aside the decision of the United States Army Court of Criminal Appeals (ACCA) because the evidence was legally insufficient. In the alternative, Appellant contended that allowing his conviction to stand based on the evidence admitted at trial would amount to a constructive amendment of the charged offense.

This Court granted review of a modified version of the question that Appellant presented in his supplement, namely, "[w]hether Appellant's conviction for sexual assault without consent was legally sufficient." *United States v. Mendoza*, 84 M.J. 105 (C.A.A.F. 2023) (order granting review). The parties' briefs, accordingly, focus on the legal sufficiency of the evidence of lack of consent under Article 120(b)(2)(A), UCMJ. The Court, however, does not answer the granted question but instead remands the case so that the ACCA may perform both a new legal sufficiency review and a new factual sufficiency review.

## II. Legal Sufficiency

Questions of legal sufficiency are reviewed de novo. *United States v. Brown*, 84 M.J. 124, 127 (C.A.A.F. 2024) (citing *United States v. Wilson*, 76 M.J. 4, 6 (C.A.A.F. 2017)). Accordingly, this Court has the ability and authority to decide whether the evidence is legally sufficient

without any further review by the ACCA. I see no prudential reason not to do so in this case given that we specified the issue of legal sufficiency and that the parties thoroughly briefed this issue.

As the Court correctly explains, the bar for finding the evidence to be legally sufficient is "very low." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (internal quotation marks omitted) (citation omitted). We must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Smith*, 83 M.J. 350, 359 (C.A.A.F. 2023) (internal quotation marks omitted) (quoting *United States v. Robinson*, 77 M.J. 294, 297-98 (C.A.A.F. 2018)).

The Court properly holds in this case that evidence that the victim was incapable of consenting because of intoxication generally cannot prove lack of consent in a case charged under Article 120(b)(2)(A), UCMJ. This holding implicates the legal sufficiency of the evidence for finding Appellant guilty because, as one of the ACCA judges observed, the "government's primary evidence of *lack of consent* in this case was the victim's lack of memory due to intoxication and outward manifestation of intoxication." *United States v. Mendoza*, No. ARMY 20210647, 2023 CCA LEXIS 198, at *12, 2023 WL 3540415, at *4 (A. Ct. Crim. App. May 8, 2023) (Walker, S.J., dissenting) (unpublished). But even if all of the intoxication evidence must be put aside, the record in this case still contains other evidence potentially relevant to the issue of consent. This Court may determine whether this other evidence is legally sufficient to sustain the finding that Appellant is guilty. *United States v. Long*, 81 M.J. 362, 364 (C.A.A.F. 2021) (assessing legal sufficiency in this manner).

The other evidence in this case includes: (1) testimony that JW (the alleged victim) had no prior relationship with Appellant; (2) testimony that JW would never have sex while on her period; (3) testimony that JW would not have pushed a tampon so far inside of herself; (4) testimony that JW made a morning-after report to the Charge of Quarters (CQ) desk after she realized something was wrong; (5)

testimony that JW was upset; (6) testimony that Appellant initially denied that he had engaged in any sexual acts with JW; and (7) testimony that JW locked herself in Appellant's bathroom. Based on this other evidence, I would hold that a rational trier of fact *could have found* that the element of lack of consent under Article 120(b)(2)(A), UCMJ, was proven beyond a reasonable doubt. Accordingly, I would answer the granted question in the affirmative, and I would not remand the case to the ACCA for further review of the legal sufficiency of the evidence.

### III. Factual Sufficiency

While I would decide that the evidence was legally sufficient, I concur with the Court's decision to remand the case for a new factual sufficiency review. Although the granted question and the briefs in this appeal do not address factual sufficiency, our new clarification of the relationship between Article 120(b)(2)(A), UCMJ, and Article 120(b)(3)(A), UCMJ, raises the question of whether the ACCA may have erred in its factual sufficiency analysis. Because this Court cannot review questions of factual sufficiency de novo, Appellant is entitled to have the ACCA perform a proper factual sufficiency review in the first instance.